ANGEL FERNÁNDEZ, demandante y apelado, *v.* GUMERSINDO FALÚ y los esposos JUAN SUÁREZ PÉREZ y MERCEDES ZENGOTITA, demandados y apelantes.

No. 4814.—*Sometido:* Marzo 12, 1930. *Resuelto:* Febrero 26, 1931.

*Feliú & La Costa,* abogados de los apelantes; *Arturo Aponte,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Versa este pleito sobre cumplimiento de contrato. Fué fallado por la Corte de Distrito de San Juan declarando con lugar la demanda. El demandado Falú no tiene en verdad interés en el litigio. La sentencia se dictó contra los demandados esposos Suárez-Zengotita y fueron éstos los que establecieron el presente recurso de apelación, señalando en su alegato la comisión de once errores.

El juez sentenciador emitió una opinión que parece conveniente transcribir, pues contiene un claro resumen de las alegaciones y las pruebas y el razonamiento que lo llevara a

decidir los problemas que se le plantearon, en contra de los demandados apelantes. Dice:

"De acuerdo con lo que se alega en la demanda, y se admite, bajo juramento, en la contestación, la corte considera probados los siguientes hechos: que por escritura número 252, otorgada el 23 de septiembre de 1924, ante el notario Heriberto Torres Solá, el demandante compró a los demandados Falú y Suárez, una finca rústica de 161.52 cuerdas, sita en el barrio de Sabana Llana, del término municipal de Río Piedras; que en dicha escritura se insertó una cláusula, la letra de la cual, dice como sigue:

" 'TERCERA: Es convenido que la finca enajenada en el párrafo primero de esta escritura se someterá a una mensura y ahora expresamente don Gumersindo Falú cede, renuncia y traspasa a favor de don Juan Suárez y Pérez, cualquier número de cuerdas que resultare en exceso de las ciento sesenta y una cuerdas con cincuenta y dos céntimos que ha servido de base para el precio de esta enajenación, el importe de cuyo exceso, si lo hubiere, lo recibirá y hará suyo dicho señor Suárez y Pérez, a quien se lo pagará el comprador don Angel Fernández Ortiz a igual precio a que resulten las cuerdas vendidas por cada cuerda, conviniéndose además expresamente en que en todo lo concerniente a dicha mensura y cobro de exceso en cuerdas, si lo hubiere, se entenderán directamente don Juan Suárez Pérez y don Angel Fernández Ortiz, siendo los gastos de esa mensura pagaderos de por mitad entre uno y otro; . . . .' " . . . . . .; que para mayor garantía y seguridad, el demandante y el demandado Suárez suscribieron un documento, que copiado a la letra dice así:

" 'En Naguabo, Isla de Puerto Rico, hoy día veintitrés de septiembre de 1924, de una parte, Don Juan Suárez y Pérez, y de otra, Don Angel Fernández Ortiz, hacen constar: Que de acuerdo con lo estipulado en la cláusula tercera de una escritura de esta fecha ante el notario Heriberto Torres Solá, efectuada entre Gumersindo Falú y Don Angel Fernández Ortiz, Don Angel Fernández Ortiz pagará a Don Juan Suárez y Pérez el exceso de cuerdas entre ciento sesenta y una cuerdas con cincuenta y dos centésimas y las cuerdas que resulten, a razón de $160.00 por cuerda; y además ahora expresamente se obliga dicho Juan Suárez y Pérez a indemnizarle a dicho Angel Fernández Ortiz a igual precio las cuerdas que falten en el caso de que medida la finca resulte tener menos de dichas ciento sesenta y una cuerdas 52 céntimos. La descripción de la finca a que este contrato se contrae resulta de dicha escritura.' (Siguen las firmas.)

"Admiten los demandados que el trabajo de la mensura se hizo

por R. González Requena, el que levantó el plano correspondiente a dicha mensura; pero niegan de modo específico, que la finca tenga 145.94 cuerdas, como aparece de la mensura hecha, y asimismo niegan también, que por haberse hecho dicha mensura, sin haber sido notificados de la misma, tengan que pagar la mitad de los honorarios del ingeniero que realizó el trabajo, así como la diferencia en el número de cuerdas que existe entre la cantidad vendida, y la que aparece de la mensura. También los demandados radicaron una contrademanda, en la que alegan que la mensura tenía que ser hecha por persona designada de común acuerdo por las partes, y que toda vez que esto no se hizo, debe la corte designar una persona para que lo haga.

"Fué el pleito a juicio el día 11 de abril de 1928, compareciendo sólo el demandante y los demandados Juan Suárez Pérez y Mercedes Zengotita. Al comenzar el juicio radicaron éstos una contestación suplementaria, en la que alegan, bajo juramento, lo siguiente:

" 'Que en julio 28 de 1927, por escritura pública número 125, otorgada ante el Notario de Río Piedras, Heriberto Torres Solá, el demandante, por sí y como apoderado de su señora esposa, vendió la finca que se describe en la demanda, a Isidoro Ortiz, por lo que estos demandados alegan que desde dicha fecha el demandante ha dejado de tener y no tiene ya derecho ni interés alguno en la presente acción contra estos demandados.'

"A tenor de esta contestación pidieron a la corte en moción, se dictara sentencia por las alegaciones y se desestimara la demanda. Se opuso el demandante, y la corte declaró sin lugar dicha moción. Practicaron entonces la prueba, y quedó el caso sometido a la resolución de la corte.

"De la prueba documental, surge claramente una relación contractual entre Suárez y Fernández, de la que es ajeno Falú, sobre la cabida de la finca vendida por éste al demandante; y tal relación, aparece expresamente del documento que se transcribe en la demanda y en la contrademanda, suscrito por Suárez y Fernández, y que antes copiamos.

"Contrato es todo acto o convenio por el que una o varias personas consienten en obligarse con respecto de otra u otras, a dar alguna cosa o prestar algún servicio. Esto es, el vínculo jurídico que nace del concierto de dos o más voluntades. ¿Cuáles fueron las relaciones voluntarias que dieron lugar al contrato? El documento a que antes nos referimos nos lo dice: Fernández pagará a Suárez el exceso de cuerdas entre 161.52 y las que resulten, a razón de $160.00 cuerda; Suárez pagará a Fernández, a igual precio, las que falten,

en el caso de que, medida la finca, resulte tener menos de dichas 161.52 cuerdas. La cuestión, pues, parece sencilla. Sólo se reduce a determinar si en la finca vendida por Falú existen las 161.52 cuerdas. Si hay una cabida mayor, Fernández debe pagar el exceso; si la cabida es menor, Suárez debe indemnizar la diferencia. Ambas partes tasan la cuerda para estos efectos a $160.00. La prueba nos dice, sin que haya habido contradicción en cuanto a esto, que mensurada la propiedad, sólo dió un área de 145.94 cuerdas. Un simple cálculo aritmético nos lleva a la conclusión de que faltaban 15.58 cuerdas del área total por que fué vendida. A razón de $160.00 cuerda, tal diferencia asciende a $2,492.80. Veamos ahora en qué condiciones se hizo la mensura. El demandado Suárez nos declaró que la mensura se hizo sin su consentimiento y que no se le dió permiso para medir. Sin embargo, la larga correspondencia cruzada entre él y Fernández, no le abona en sus manifestaciones. Más bien nos da la impresión de que de modo contumaz, sin razón alguna, eludió siempre intervenir en la mensura, tal vez en la creencia de que haciéndolo así podría burlar la responsabilidad que se impuso al suscribir el contrato. Los términos de éste son claros, exentos de toda ambigüedad, y para un hombre como Suárez que nos dió la impresión de estar versado en estas contiendas judiciales, no pueden decir otra cosa, sino lo que clara, abierta y francamente dicen. Tampoco podía él ignorar la mensura de la finca. Conocemos al testigo González Requena y su testimonio nos merece entero y absoluto crédito; Suárez y Falú le señalaron sobre el terreno los puntos que debían servirle de norma y guía para hacer la mensura. Después de hecha, Suárez le pregunta cuál es la capacidad de la finca. ¿Protesta Suárez de ella? No. Pasivamente aguarda a que se desarrollen los hechos. ¿Puede él alegarnos ahora que como no se fijó fecha para la mensura, se está en el caso de una obligación que no tiene plazo determinado y que debe regirse por los preceptos del artículo 1095 del Código Civil? No estamos dispuestos a aceptar la teoría. Lo primordial y cardinal en este caso era saber cuál era la cabida de la finca, ya que sobre ella giró el contrato. No puede dejarse al arbitrio de uno de los contratantes, la validez y el cumplimiento de un contrato. De otra suerte, nunca hubiera habido agrimensor o ingeniero bastante hábil, a juicio de Suárez, para hacer la mensura. ¿Por qué? Porque no le interesaba, porque él quería que las cosas continuasen así indefinidamente. Y después de hecha la mensura: ¿qué le impedía a Suárez rectificarla? Porque el contrato no dice que la mensura se haría por persona escogida por ambas partes y de *mutuo acuerdo*. Sólo dice la cláusula tercera de la escritura que la finca

*se someterá a una mensura,* pero no establece la condición de que quien la haga sea escogido por ambos contratantes. Si no quiere actuar uno de éstos, no obstante las oportunidades que el otro le brinda, éste puede realizar la mensura y darle traslado al rehacio a ella, para que la rectifique, y se convenza de la misma, a fin de que puedan cumplirse los términos de la convención. La ley no puede exigir más. Fernández cumplió su parte en el contrato y no puede Suárez aprovecharse de su propia mora y negligencia al negarse, o eludir, el cumplimiento de la suya. El contrato es ley para las partes contratantes y su cumplimiento es ineludible para ellas. Un contrato bilateral y oneroso como el concertado entre Suárez y Fernández, no puede ser destruído por la voluntad de una sola de las partes contratantes.

"Nos queda por considerar, la cuestión que el demandado Suárez levanta en su contestación suplementaria; esto es, que enajenada la finca con posterioridad a la iniciación del pleito, y no habiéndose reservado el demandante derecho alguno en relación con la mensura, ha perdido cualquier derecho que pudiera haber tenido contra los demandados. La razón de este argumento es que el demandado ha impedido con tal venta que se cumpla la condición de la que depende la responsabilidad del demandado Suárez. Además existe el hecho de que la venta se hizo con beneficio para el demandante, el que también la vendió por el número de cuerdas que la adquirió de Falú. No vemos cómo esto pueda alterar la relación contractual entre Suárez y Fernández. Si aceptamos para los efectos de este argumento que la finca hubiera tenido mayor cabida de 161.52 cuerdas, aun cuando Fernández la hubiera vendido sin beneficio, y aun con pérdida, ¿no hubiera estado en el deber de indemnizar a Suárez por el exceso en el número de cuerdas? Por otra parte, la cuestión aquí planteada no es una referente al título de la finca; sino cuestión personal entre Suárez y Fernández sobre cobro de determinada suma de dinero, proveniente de un contrato por la mayor o menor cabida de la finca. Aparte de que probada como lo ha sido la mensura, sólo hay que considerar los efectos de la misma para el cumplimiento del contrato celebrado entre Suárez y Fernández. Este cumplió las condiciones que se impuso; constituyó la hipoteca en garantía del crédito a favor de Suárez; la canceló; hizo medir la finca con conocimiento y hasta intervención de Suárez (véase el testimonio de González Requena), y ahora tiene derecho claro, absoluto, indiscutible, a que la otra parte contratante, o sea Fernández, también cumpla los términos de la convención acordada, abonándole la diferencia entre el número de cuerdas porque aparece vendida la finca y el que real-

mente tiene, al precio convenido. La situación, pues, es de una claridad meridiana. No hay sombras, medias tintas, ni penumbras. Fernández cumplió su parte del contrato. Suárez debe cumplir la suya.

" *        *        *        *        *        *        * "

Los once errores que señalan los apelantes en su alegato pueden clasificarse así: 1, falta de hechos en la demanda para constituir una causa de acción; 2, impedimento por parte del demandante a virtud de sus propios actos para ejercitar esta acción; 3, falta de prueba e indebida apreciación de la misma; y 4, reglas erróneas de la corte en relación con la práctica de la evidencia.

Basan los apelantes la insuficiencia de la demanda en que no se alega en ella que el perito que practicó la mensura fuera designado de común acuerdo por ambos contratantes, en que la acción es prematura por no haberse fijado en el contrato el plazo durante el cual debería ser medida la finca, y en que no se alega el requerimiento al demandado para practicar la medición.

Estudiados la cláusula tercera de la escritura de venta de Falú a Fernández y el contrato privado de Fernández y Suárez en que se basa este pleito, no se encuentra en ellos ninguna disposición expresa en el sentido que alegan los apelantes. Se pactó que la finca vendida "se sometería a una mensura". Claro está que la consecuencia lógica de tal pacto es que la mensura se practicaría de común acuerdo entre las partes y que sólo estaría justificada una de ellas para actuar separadamente cuando la armonía no fuera posible a virtud de los actos injustificados de la otra, pero de esto no se infiere que existiera la necesidad de alegar expresamente en la demanda que la mensura se había practicado por un perito nombrado de común acuerdo por las partes. Bajo esas circunstancias nos parece suficiente la alegación que contiene la demanda, a saber: "Que de acuerdo con lo convenido entre el demandante y los demandados la finca objeto de la compraventa tenía que ser mensurada. . . y alega el demandante

que, comisionado el técnico don R. González Requena para proceder a dicha mensura, realizó el trabajo y levantó el plano. . ."

Es cierto también que no se fijó en el contrato un término expreso para practicar la mensura y que no hay duda alguna de que lo correcto era practicarla con conocimiento e intervención de ambas partes, pero a nuestro juicio, admitiendo la verdad de lo alegado en la demanda, como es necesario admitirlo por tratarse de una excepción previa, de lo alegado se deduce que el curso ordinario de las cosas fué seguido al comisionarse al técnico González la práctica de la mensura. Pudo la demanda ser más clara y específica, pero tal como se formuló es suficiente y determina el derecho ejercitado.

■ Por el segundo error se levanta la cuestión de impedimento. Parece seria al principio, pero después de considerados los hechos fríamente a la luz de la opinión del juez sentenciador y de los alegatos de los abogados de las partes, se concluye que el juez estuvo acertado al resolver la misma en la forma en que lo hizo.

La acción que surgía del pacto celebrado entre Fernández y Suárez no feneció por la venta de la finca por parte de Fernández. La venta se verificó en julio de 1927. Este pleito se inició en mayo de 1925. En la venta de 1927—Fernández a Ortiz—se describió la finca exactamente como aparece descrita en la venta de 1924—Falú a Fernández. El precio de la venta de 1924, según reza la escritura fué de $20,000, aunque Fernández sostiene que el verdadero precio fué el de $26,000 incluyendo la hipoteca que constituyó inmediatamente a favor de Suárez. El precio de la venta de 1927 fué $35,500. De ambos hechos, cabida y precio, derivan los apelantes el impedimento del demandante para continuar gestionando en este pleito.

No entraremos en la interesante discusión que sostienen los abogados de las partes en sus alegatos sobre si es o no aplicable a un caso como éste la doctrina de *estoppel,* o sea,

sobre si no siendo los apelantes parte en la escritura de venta de 1927, pueden invocarla para impedir al demandante que actúe en contra de lo que en ella declarara. En cuanto al precio bastará decir que el demandante explicó que el aumento no se debió a ganancia sino a haberse incluído en la venta las cañas que en la finca plantara, y que si a ello no se debiera, el que las tierras aumentaran de valor en el transcurso de tres años, en nada alteraría los términos del contrato de 1924 que tiene vida por sí solo. La cuestión relativa a la descripción de la finca, es más delicada. El demandante apelado explica que se debió a que el contrato fué redactado por el notario que tuvo como base la anterior escritura. La explicación no tiene gran peso. Lo mismo que Fernández dió instrucciones al notario en cuanto al precio, que era diferente, debió darlas en cuanto a la cabida, que también era diferente. Pero nada conocemos con respecto al comprador Ortiz. La venta no se hizo a tanto por cuerda, sino por precio alzado. Quizá Ortiz estaba enterado de todo, y si no lo estaba, no sabemos lo que pueda hacer una vez que se entere de que a su vendedor le constaba a ciencia cierta que la cabida de la finca era menor y tenía un pleito entablado precisamente para reclamar el precio de la diferencia en su contra.

■ Los errores tercero, cuarto y quinto, tercera clasificación, se refieren al resultado de la prueba. Creemos que no se cometieron. La actitud del demandado Suárez surge de la prueba tal como la describe el juez sentenciador en su opinión. La mensura se practicó con su conocimiento y también puede decirse que con su intervención. Parece que todo lo que dió motivo a la cláusula tercera de la escritura de venta de 1924 y al contrato privado entre Suárez y Fernández se debió a cierta colindancia de la finca con "la laguna de San José y un caño". Quizá Suárez pensó que la línea se extendía más allá de lo verdadero y aceptó el trato, pero hizo todo lo posible por no cumplirlo cuando la línea quedó fijada en la mensura de acuerdo con los planos levantados

por el colindante de la laguna y el caño, El Pueblo de Puerto Rico, y con su posesión desde 1917 o por lo menos desde 1922, y la superficie reducida en la forma indicada en la demanda.

¿Pudo darse crédito a la mensura? Se practicó por persona experta. Las deficiencias que anotan los apelantes en su alegato, unas no existen y otras no tienen el alcance que les atribuyen. La forma de practicarla quedó explicada. Los datos que se proporcionaron al perito también. Los apelantes pudieron intervenir a tiempo y no lo hicieron. Pudieron practicar otra mensura por sus peritos, y tampoco lo hicieron. Prefirieron descansar en cuestiones técnicas que han quedado destruídas por la fuerza de los hechos mismos.

■ No creemos que el demandante tuviera la obligación de acudir a la corte para que fijara el término dentro del cual debiera practicarse la mensura. El no procedió a espaldas de los apelantes y cuando se convenció de su actitud dilatoria y obstaculizadora, actuó por sí mismo y sometió su actuación y la del perito que practicó la mensura, al crisol de un juicio, en el que los apelantes tuvieron todas las garantías necesarias.

■ Que el juez sentenciador dijera en su opinión: ''Conocemos al testigo González Requena y su testimonio nos merece entero y absoluto crédito'', no vicia su conclusión de tal modo que deba revocarse la sentencia, como sostienen los apelantes sin citar autoridad alguna. Claro es que sólo dentro de la evidencia practicada en el juicio es que deben encontrarse los elementos en que se basan los fallos judiciales, pero no es posible evitar que los jueces como hombres que viven su vida de relación en la sociedad, tengan conocimiento personal de la conducta de muchos otros hombres que a veces comparecen ante ellos como testigos. ¿Cómo sería posible que el juez de los hechos, que lo es también de la credibilidad de los testigos, pueda en conciencia dar igual crédito a dos hombres uno de los cuales le consta que tiene la costumbre de mentir y otro de los cuales ha visto conducirse siem-

pre con honradez e integridad? Creemos, desde luego, que debe actuarse siempre con gran cautela y que la norma es que el juez no conoce a los testigos y juzga de sus testimonios por sus propios méritos y por el mérito de la conducta del testigo en la corte, mientras declara en el juicio, pero es imposible eliminar el elemento conocimiento personal del juez como tal cuando existe en la formación de su juicio sobre la credibilidad que le merezca el testigo.

Los errores de la cuarta clasificación, o sea, los relativos a objeciones tomadas al practicarse la prueba, no serán considerados por escrito. No tienen mérito. De haberse cometido algunos de ellos, jamás producirían la revocación de la sentencia porque no son perjudiciales. Se advierte una gran diferencia en la discusión que de ellos hace el abogado de los apelantes en su alegato con la de los cuatro primeros que son en los que en verdad pone verdadero énfasis.

*Debe confirmarse la sentencia apelada.*